GOVERNMENT OF THE VIRGIN ISLANDS

v.

JOSEPH LYNCH

Criminal No. 28-1970

District Court of the Virgin Islands

Div. of St. Croix

September 24, 1971

YOUNG, *Judge*

MEMORANDUM OPINION

Appellant was tried and convicted by the Municipal Court of having violated Title 19 V.I.C. § 632(c) which makes it an offense to possess narcotics paraphernalia with the intent to use same to administer drugs without a valid written prescription. On appeal, Appellant presents three issues:

(1) Whether, pursuant to 19 V.I.C. Sec. 632(c), the Government must produce affirmative evidence to prove that the alleged paraphernalia was or had been adapted for the administering of narcotic drugs.

(2) Whether 19 V.I.C. Sec. 632(c) requires the Government to prove beyond a reasonable doubt that the Defendant had possession of the alleged paraphernalia; and

(3) Whether his possession was with the intent to use said paraphernalia for the administering of narcotic drugs.

The facts gleaned from a rather confusing transcript are as follows: On October 23, 1968, police detectives executed a search warrant on the premises of No. 3 Queen Cross Street, Christiansted, where the defendant lived, and during the course of their search, found two hypodermic syringes, needles, two eyedroppers and one bottle cap—the latter was classified as a "cooker". No chemical analysis was made of the items. In addition, when confronted by the police officers, defendant attempted to flee but was apprehended and a search of his person produced a .22 caliber "pen gun".

 Title 19 V.I.C. § 632(c) is almost a verbatim reenactment of New York Penal Law, § 1747-C. Our statute provides:

> It shall be unlawful for any person or persons, except a duly licensed physician, dentist, veterinarian, nurse, podiatrist, . . . to have under control or possess, a hypodermic needle or any other instrument or implement adapted for the administering of narcotic drugs, *with intent to use such syringe, needle, instrument or implement for such purpose,* unless such possession be obtained upon a valid written prescription. . . . (Emphasis supplied.)

The underlined section differentiates our statute from New York's. While the Court may agree that the inclusion of said phrase makes it very difficult to secure a conviction under this subsection, the Court must follow the plain language of the statute. As noted in Commonwealth v. Yaple, 273 A.2d 346 (1970):

The Legislature may decide that a threatened harm to the public is so serious that it justifies an absolute prohibition. In such cases, the Legislature will provide that guilt may be established without any requirement that the defendant be proved to have had a specific criminal intent or knowledge in acting. Whether or not criminal intent or guilty knowledge is a necessary ingredient of a statutory offense, therefore, is a matter of construction to be determined from the language of the statute and its manifest purpose and design[.] (Id. at 351.)

The Legislature must have had some purpose to include in our statute the requirement of intent, especially in view of the significant difference between our statute and the New York Statute from which it is derived. To secure a conviction under our statute it is imperative that the question of intent be clearly resolved in favor of the government. For the above reasons, the case of People v. Saul, 12 Misc.2d 356, 176 N.Y.S.2d 405 (1958), cited by the Government in its brief, is not applicable.

 The Government, however, contends, and the Court agrees, that intent may be proven circumstantially. But even if the proof be circumstantial, the requirement that the defendant be proven guilty beyond a reasonable doubt must still be met. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127 (1954). The question is whether the presumed fact is more likely than not to flow from proof of a fact on which it is made to depend. The Government claims that the initial attempt to flee by the defendant, the search and seizure of the paraphernalia in defendant's bedroom, the testimony of Detective Smail that the bottle cap was a "cooker", are all factors to be considered in the question of intent. Defendant, on the other hand, argues that these factors were satisfactorily explained: the attempt to flee when confronted by the police officers was triggered by the unlawful possession of a firearm on his person; there was no showing that the defendant was in exclusive control of

━━━━━

the apartment nor of the bedroom wherein the alleged paraphernalia was found, and there was no testimony that the implements were adapted for administering narcotic drugs. I agree. Furthermore, the attempt to flee occurred prior to the search of the premises.

■■ The Court is particularly concerned with the failure of the Government to make a clear showing that the paraphernalia was adapted for administering narcotic drugs. There was no connecting proof that the items had been used as narcotics paraphernalia. No chemical analysis was performed and the characterization of the bottle cap as a "cooker" was merely conclusory in view of the failure of the Government to qualify the witness as an expert. Defendant argued on appeal that such failure was fatal and the Court agrees.

In view of the above, the Court does not reach the question whether the defendant had the burden of affirmatively showing that he had a valid prescription for the implements. It was incumbent upon the Government to prove beyond a reasonable doubt that the defendant intended to use the implements to administer narcotic drugs, and having failed to do so, the defendant need not come forward with an affirmative defense. The Government having failed to meet its burden, the conviction must fall.

The judgment will be reversed with direction to acquit the Appellant.